## JACK HARRISON v. STATE.

No. A-1804.   Opinion Filed October 30, 1913.

(135 Pac. 948.)

1.   APPEAL—Review—Discretion of Trial Court.   (a) An application for continuance is addressed to the sound discretion of the trial court, and in the exercise of this discretion it must affirmatively appear that an abuse thereof occurred before this court will interfere with the ruling of the lower court.

(b)   When an application for continuance is made by a person on trial and overruled by the court, all the facts and circumstances disclosed by the evidence adduced at the trial will be considered by this court in determining whether or not the exercise of discretion by such court was abused in denying the application.

2.   SAME—Questions of Fact—New Trial.   (a) When the evidence disclosed by the record tends reasonably to support the verdict of the jury, such verdict will not be disturbed by this court on appeal.

(b)   A motion for new trial, based on an allegation that the evidence does not support the verdict of the jury, is addressed, first, to the sound discretion of the trial court, who has seen and heard the witnesses testify, and who must necessarily know a great deal more about many facts and circumstances produced at the trial, which cannot be written into a record, than an appellate court can by reading the record after it is written.   And when a trial court has considered and passed upon such an issue, it comes to this court only, on the proposition that as a matter of law the verdict is contrary to the evidence.

Under this rule, see opinion for facts upon which the verdict in this case is based, and upon a review of which we cannot say as a matter of law the verdict is contrary to the evidence.

*Appeal from District Court, Beckham County;*
*G. A. Brown, Judge.*

Jack Harrison was convicted of larceny, and appeals. Affirmed.

*Minton & Bingham,* for plaintiff in error.

C. J. *Davenport,* Asst. Atty. Gen., for the State.

ARMSTRONG, P. J. The plaintiff in error, Jack Harrison, was convicted at the February, 1912, term of the district court of Beckham county, on a charge of larceny, and his punishment fixed at imprisonment in the state penitentiary for a period of one year and six months. To reverse this judgment he has brought this appeal.

Only two questions are properly raised by the record and brief on behalf of plaintiff in error. The facts developed at the trial control the disposition of both.

Marshall Anderson was the complaining witness, and on behalf of the state testified that he lived at Texola; that on the night of March 30, 1911, he lost 174 pounds of bacon worth from 16 to 18 cents per pound; that the bacon was taken from a box in his barn where he had packed it away in wheat bran; that on the morning after the bacon was stolen he discovered the loss and upon investigation found that a two-horse hack had pulled out of the main road near the section line and stopped at his barn; that he followed the tracks of the vehicle to a place in Texola, where it was afterwards proven the hack of the plaintiff in error had been standing. There had been a rain a short time before, and the tracks were plain. Witness further testified that he reported his loss to the deputy sheriff at Texola, and after some preliminary examinations a search warrant was sworn out, and the deputy sheriff, Mr. Earnest, and Mr. Woolsey, Mr. Loftis, and the witness made a thorough investigation and found that the horse tracks near the barn of the complaining witness compared with the tracks at the place where the team of plaintiff in error had been standing in the town of Texola; that these parties then went to the home of plaintiff in error and found his hack swept out clean; that on the ground in the rear of the hack was wheat bran containing salt and grease and an odor of

bacon; that about 500 or 600 yards from the house they found the plaintiff in error in a ravine, apparently hiding; that near where he was found the lost meat was also found in some tow sacks covered over by dirt; the meat was positively identified by the complaining witness as his. Witness further testified that he gave no one permission to take it away; that it was taken away without his knowledge or consent and against his will.

Witness Woolsey corroborated the major part of the testimony of complaining witness, and in addition testified that plaintiff in error was at his store about 8 o'clock on the evening of the theft and wanted to buy certain groceries on time; that witness would not sell them to him. He also testified that the meat was worth about 15 or 16 cents a pound, and that the plaintiff in error was wearing a pair of leather boots when at his place.

Witness Martin Loftis corroborated the testimony of Woolsey, except he did not testify as to the value of the meat in question or what the plaintiff in error was wearing.

On behalf of the defense, the plaintiff in error himself testified that he was in the town of Texola on the 30th of March; that his son Lon was with him; that they left Texola about 8 o'clock at night; that he wore rubber boots at the time; that he knows where complaining witness Anderson lives, but was never on Anderson's premises; that he did not take the meat in question, and did not have anything to do with it; that it was not on his quarter section of land when found, but admitted that it was in a pasture used by him; that he did not take any meat home with him on the night of the 30th of March; that he had some groceries and a barrel of queensware in his hack; that Tom Stewart and John Esty met him above half a mile from his home; that his sons Lon and Verge helped him unload his groceries, etc., from the hack. He admitted on cross-examination that his hack stood near the old Armfield saloon building in Texola, where the state contended it had been. He testified at first that he only carried one sack of flour home, and later that he had two sacks, one of which

he got at Texola and the other at Beninine; that he got home about 9 or 10 o'clock; that he left Texola about 8 o'clock; that he lived eight or nine miles from Texola. On further cross-examination he testified that Tom Stacey came down and helped him unload his hack and that John Esty stayed all night with him; that J. H. Brady was also at his house that night.

Lon Harrison, son of the plaintiff in error, testified that he was in Texola with his father on the 30th of March; that they left town about 9 o'clock; that his father on that day wore rubber boots; that he was with his father all day and during the night after they left town; that his father did not go to Marshall Anderson's place on that date; that they carried home with them, among other things, two sacks of flour, both of which they got at Butler's in Texola; that they did not get any at Beninine.

Bert Harrison, another son of the plaintiff in error, testified that on the 30th of March he was at the home of Tom Stewart; that he went home at night; that John Esty, Tom Stewart, and J. H. Brady were there; that his father got home about 10 o'clock in the hack, and had certain groceries and glassware with him; that there was no meat in the hack; that no meat was carried from their house that night into the ravine; that his father on that date was wearing rubber boots. He testified that Stacey stayed all night; that Esty did not.

Witness Crawford testified for the plaintiff in error that he was at complaining witness Anderson's place four or five days after the alleged theft; that he had a conversation with Anderson, who showed him the tracks where the hack and team had stopped; that he saw some horse and mule tracks, which were pointed out by Anderson; that he looked for bran in Harrison's yard and did not see any.

Other witnesses testified on behalf of the plaintiff in error that dry salt meat was worth from 11 to 12 cents a pound; that the meat in question was probably better than the meat they could buy for that money.

Plaintiff in error, Harrison, being recalled, testified that he was down in the ravine looking for his horses and cows when

the officer and searching party found him; that he had tried to drive his stock up and had set down to rest.

Witness O. D. Earnest, on behalf of the state, testified that on the evening of the theft he saw the plaintiff in error and his boy in a buggy or hack about a mile south of Texola; that at that time plaintiff in error had on a pair of leather boots; that he examined the tracks the horses made at the barn of the complaining witness; and that there were no mule tracks among them.

When the case was called for trial, the plaintiff in error filed a motion for continuance, which is as follows:

"Jack Harrison, being first duly sworn, says that he is the defendant in the above-entitled cause; that he is unable to proceed to trial of this cause at this time for want of material evidence, to wit, the evidence of one Tom Stewart, who is a material witness in this cause, and defendant has used due diligence to obtain his evidence. That said witness was duly subpoenaed to be present at this trial in this court, but that the father of the said Tom Stewart is now at the point of death, very dangerous, and on yesterday afternoon the said Tom Stewart phoned this defendant's attorney, J. A. Minton, that it would be impossible for him, the said Tom Stewart, to be present this term of the district court of Beckham county. That the said Tom Stewart refuses to leave the bedside of his sick father. That the said Tom Stewart would, if present, testify in said cause as follows: That he (Tom Stewart) on the night on which this defendant was accused of stealing the meat in question, was at the home of this defendant, and had started home and met this defendant, and that he, the said Tom Stewart, got in the wagon of this defendant and rode in said wagon to the home of this defendant, a distance of some 400 yards, and that the said Tom Stewart helped this defendant unload the said wagon, and that there was no meat in or about the said wagon, and that he, the said Tom Stewart, did not that night see any meat, and that he would have seen same if there had been meat in the wagon. That said evidence is material, and that the same is true. That said evidence cannot be had at this term of the district court, except by the son of this defendant, which said evidence coming from defendant's son would not benefit this defendant so much as the evidence of said absent witness. That said absent witness resides in Beckham county and can be had at the next regular term of the district court in Beckham county.

That this application for continuance is not made for delay, but that substantial justice may be done, and he asks that this cause be continued until the next regular term of the district court."

The first assignment of error argued by counsel is that the court erred in overruling this motion for continuance. With this contention we cannot agree. The question has been too often passed upon by this court to require a discussion at this time. It may be observed, however, that there were two other witnesses who were at the home of the plaintiff in error at the same time Stewart was there, neither of whom was produced at the trial and nothing shown to indicate why they were not called. The trial court was probably of opinion that the motion for continuance grew out of a desire for delay rather than for evidence.

The other assignment is based on the contention that the verdict is contrary to the evidence. The case of the state is based wholly on circumstantial evidence. The plaintiff in error and his sons testified that he did not commit the crime. The cause was submitted to the jury by the following instruction, which is a clear enunciation of the law:

"In this case the state relies for a conviction upon circumstantial evidence, and you are instructed that, to warrant a conviction on circumstantial evidence, each fact necessary to establish the guilt of the defendant must be proven by the evidence beyond a reasonable doubt; all the facts and circumstances relied upon must be consistent with each other, and, taken together, must be of a conclusive nature, leading, on the whole, to a satisfactory conclusion that the accused, or he had others acting with him, committed the offense charged. The mere union of any number of circumstances, each of an imperfect and inconclusive character, will not justify a conviction. They must be such that when taken together they generate and justify belief, beyond a reasonable doubt, of the guilt of the defendant. It is not enough that they coincide with each other and render probable his guilt, but they must exclude every other reasonable hypothesis. No other conclusion but that of the guilt of the accused must fairly and reasonably grow out of the evidence, and the facts and circumstances relied on must be incompatible with the innocence of the defendant, and in-

capable of explanation upon any other reasonable hypothesis than that of his guilt; otherwise the defendant must be acquitted."

The rule is well settled in this jurisdiction that, when the evidence tends reasonably to support the finding of the jury, their verdict will not be disturbed by this court. The circumstances introduced in evidence by the state, together with the testimony on behalf of the plaintiff in error, were all before the jury. The witnesses appeared in person before them, and, while we have seen stronger cases of circumstantial evidence in which verdicts of guilty were not returned, yet it is clear to our minds that the jury in this case made no mistake. The unsatisfactory testimony produced by the plaintiff in error, contradicted as it was by his own witnesses and by the witnesses for the state, strongly corroborate the contention that he is guilty of the larceny charged.

We have carefully reviewed the record and find no error sufficient to justify a reversal. The record presents no other questions that we are called upon to determine.

The judgment of the trial court is therefore affirmed.

DOYLE and FURMAN, JJ., concur.