## LON JOHNSON v. STATE.

No. A-3804.   Opinion Filed Jan. 4, 1923.
(211 Pac. 425.)

(Syllabus.)

1. **Homicide—Evidence Sustaining Conviction for Murder.—**In a prosecution for murder, involving self-defense issue, evidence held sufficient to sustain conviction.

2. **Appeal and Error—Sufficiency of Evidence—Extent of Review.—**Where there is substantial evidence to show the guilt of the defendant, this court will not weigh the sufficiency of the evidence to sustain a conviction, but will consider the whole evidence to ascertain whether a conviction is founded on substantial evidence.

3. **Same.—**The jury are the exclusive judges of the credibility of witnesses and the weight to be given their testimony, and a verdict of conviction will not be reviewed on appeal on arguments directed to the credibility of witnesses or the weight to be given their testimony.

4. **Evidence—Evidence of Collateral Facts Tending to Prove Distinct Offense Admissible to Prove Motive.—**In a criminal pro-

secution, evidence of collateral facts tending to prove a distinct offense is admissible if it has a tendency to prove motive, intent, or other material fact.

Appeal from District Court, Cherokee County; E. B. Arnold, Judge.

Lon Johnson was convicted of murder and he appeals. Affirmed.

J. I. Coursey, for plaintiff in error.

Geo. F. Short, Atty. Gen., for the State.

DOYLE, P. J. The plaintiff in error, Lon Johnson, was informed against for the murder of one Rex Sansing. The trial jury found him guilty of murder and fixed his punishment at imprisonment for life in the state penitentiary. From the judgment rendered in accordance with the verdict, he appeals.

The errors assigned are substantially as follows: First, that the verdict of the jury is contrary to the law and to the evidence; second, that the court erred in admitting incompetent and prejudicial testimony; third, that the court erred in rejecting legal and competent testimony offered by the defendant. The record is voluminous, but the facts which we think sufficiently make clear the questions necessary for us to discuss are substantially as follows:

The killing occurred on the night of the 20th day of November, 1919, on a byroad about three or four miles south of the town of Parkhill, in Cherokee county, between the hours of 10 and 11 o'clock. The deceased, Rex Sansing, and the defendant, Lon Johnson, had lived there in that neighborhood for at least 12 years; during the year 1910 Rex Sansing was in business in the town of Parkhill, and in his place of business a difficulty arose between Lon Johnson and one Ed Newton,

a cousin of Johnson, and in connection with this difficulty Tom Johnson, a brother of Lon Johnson, was killed. Ed Newton was charged with the murder of Tom Johnson. On his trial Rex Sansing and his wife testified as witnesses. Newton was acquitted on the ground of self-defense.

Lon Johnson became embittered towards Rex Sansing and his wife by reason of the testimony which they gave upon the trial of Ed Newton, and made threats against the life of Rex Sansing, and some time afterwards a charge of dynamite was placed under the house of Rex Sansing, where it exploded. Later on Lon Johnson admitted that he had dynamited the home of Rex Sansing; that he had stated on numerous occasions that he had intended to kill Rex Sansing, because his testimony had cleared the man who killed his brother, Tom Johnson.

The only eyewitness of the killing, other than plainitff in error, was the deceased's brother, Harve Sansing. His testimony was substantially as follows:

"I have lived at Parkhill continuously for about 15 years, excepting while in the army. Parkhill was the home of my brother, Rex Sansing, for the past 10 years. On the 20th day of November, 1919, Rex drove Al Johnson and his wife home in his automobile. After supper I went with my brother, Rex, to Al Johnson's; we then went to the Owen schoolhouse; from there we went to the home of Lee Johnson. Charley Boswell and Ralph Davidson were there. Al Johnson went to a corn shock and got a bottle of whisky; then we went back to the car. We stayed there a couple of hours. Lon Johnson came there about 15 minutes before we left and left there with us. We started to go home; after going about half a mile Lon Johnson commenced crying and cursing, saying, 'Let me out.' Rex drove the car to the left of the road; Lon Johnson got out and walked off 10 or 12 feet and pulled a gun and stood there crying and cursing. We commenced trying to talk him out of doing anything. Rex told him we were friends and we

did not want any trouble. Lon said, 'Rex, I am going to kill you,' and commenced firing. Rex fell, and Lon kept firing. I ran and caught him, and he hit me over the head with his gun. I threw him down and took the gun away from him and hit him over the head two or three times, and he ran off.''

He identified an automatic pistol as the one he took from Lon Johnson.

As a witness on his own behalf, Lon Johnson testified:

''My age is 33 years. I was acquainted with Rex Sansing for about twelve years. On the evening of the shooting I got on my horse and went to Parkhill and from there I went to a spelling match. After it was over I went up to my brother Al's place. On the way I saw Rex and Harve Sansing standing in the road; they had a fire built. Harve Sansing said, 'Hello there,' and asked me who I was. I told him, and asked him who he was. He said, 'Sansing'; said he was lost and could not find the road out and that I would have to show him the way out or he would beat my brains out. Rex Sansing said, 'Show him the way out.' I told him that I would. Rex had taken hold of the bridle rein of my horse. I tied the horse by the side of the road; then I told them to get in the car; and we started down the road leading to Parkhill. Rex commenced running the car fast and reckless. I tried to get him to quit and he would not do it; I slammed my foot on the brake, and it stopped. I jumped out of the car; Rex Sansing came right out after me and asked me what I was going to do. I said I was going to go back. He said, 'You are going to play hell,' and he hit me with his fist. We commenced knocking at each other, and I backed up to the hind wheel. He came out with a car crank in his hand and told Harve to get away. Then he hit me on the side of the head with the car crank and knocked me down. I got up; he hit me again and knocked me down; and as I got up Harve Sansing kicked me. I was trying to get my gun. Rex hit me again with the car crank and knocked me down; as I got up I went to shooting back. I fired four or five shots. It was an automatic gun. When Rex fell Harve grabbed me, and I hit at him with the gun. He

grabbed and wrung it out of my hand and leveled the gun at me. I whirled and ran north through the woods.''

The contention that the evidence does not support the conviction and that the verdict is contrary to the evidence is not sustained by the record. This court will not pass upon the weight of the evidence, where there is a direct conflict in the testimony for the state and that for the defense, in order to determine whether or not the defendant was guilty as charged. The jury are the exclusive judges of the credibility of the witnesses and the weight to be given their testimony, and, under the evidence in this case, the defendant's guilt or innocence was a question for the jury to determine, and they have determined it against him upon testimony sufficient to sustain their verdict.

Another contention is that the court erred in admitting evidence tending to show that several years prior to the homicide the house of the deceased was dynamited, and that afterwards the defendant admitted that he dynamited the house of the deceased. In our opinion the testimony objected to was properly admitted as tending to show motive. The motive with which a crime is committed is always material, and a proper subject of inquiry. That it is established by proof of collateral matters prejudicial to the defendant does not render the evidence incompetent. Even where the evidence of collateral facts tends to prove the commission of a distinct offense, it is nevertheless admissible if it has a direct tendency to prove motive or intent or other material facts.

Proof of the defendant's animosity against the deceased, whose testimony he believed had secured the acquittal of the man who had killed his brother, was properly admitted, even though such acts and expressions of malice towards the deceased were long before the killing and followed by apparently friendly relations.

The defendant's animosity might have resumed its influence and become intensified by reason of his intoxicated condition at the time of the homicide, and it is further shown that the defendant met Ralph Davidson and Charles Boswell on the road not far from the scene of the killing about 15 or 20 minutes before the same took place and showed them his pistol and remarked:

"If you see any one down the road that wants to fight, you send them up here, and when they come up here I will send them further."

Upon his cross-examination, the defendant admitted that he knew Harve and Rex Sansing were down the road at the time.

As to the remaining assignment, it is impossible to determine from the record what evidence was intended to be introduced, because no offer of proof was made. When objections to a question are sustained, if it is desired to reserve the question as to the competency of the testimony to be introduced for the determination of this court, the record must contain some showing what the testimony of the witness would have been had he been permitted to answer the question, so that this court may determine as to whether or not it was material and competent and as to whether or not the defendant was prejudiced by its exclusion.

Upon a careful consideration of the whole case we are of opinion that the substantial rights of the defendant have not been prejudiced by reason of any error of law appearing in the record.

The judgment is therefore affirmed.

MATSON and BESSEY, JJ., concur.