## LUTHER DITMORE v. STATE.

No. A-7506.   Opinion Filed Nov. 29, 1930.
(293 Pac. 581.)

J. I. Howard, Wm. S. Hamilton, Edward C. Gross, J. Q. A. Harrod, Laynie W. Harrod, and P. H. Morgan, for plaintiff in error.

J. Berry King, Atty. Gen., and A. J. Morris, Co. Atty., for the State.

EDWARDS, P. J.   The plaintiff in error, hereinafter called defendant, was convicted in the district court of Caddo county on a charge of murder, and his punishment fixed at life imprisonment. The case was closely tried, and is well briefed by able counsel for both the state and the defendant.

Defendant was charged with the murder of Ted Fisher. The evidence shows a state of facts about as follows: Defendant, a married man 40 years of age, was living with his wife in the town of Hinton. Deceased was a young man, some 22 or 23 years old and for some time had been a close friend of defendant and his wife, frequently visiting at their home. On the evening of the homicide, several visitors, including deceased, were at defendant's home. All left except deceased, and both defendant and deceased drank intoxicants. Later in the evening, defendant went away from his home for a short time, and when he returned he assaulted and killed deceased, beating and stomping him to death in a brutal manner. The theory of the state is that the killing was for revenge, because deceased had told the wife of defendant of his misconduct with other women. In support of the state's theory, there was the further evidence of the position of the body of deceased. See Ex parte Ditmore, 42 Okla. Cr. 111, 274 Pac. 697. Defendant admitted the homicide, but testified that, when he returned home after a short absence, he found Fisher attempting to have sexual intercourse with his wife; that he immediately went to her assistance, and was attacked by deceased with a knife, and he killed him in his necessary self-defense; further that his reason was dethroned, and he was temporarily insane after the first blow. His testimony on this point is:

"Q. When you entered, did you finally get into the bedroom? A. Yes, sir. As I entered the bedroom he reached up—

"Q. Who? A. Ted Fisher. That is the first I was positive that it was him. He reached up on the edge of this bed in such a position on the edge of the bed with a butcher knife in his hand and at the same time I hit him in the face.

"Q. Do you recall what the nature of the fight was or extent or how long it continued? A. No, sir; I do not.

"Q. What is the next thing you know about it? A. The next thing I remember was I was standing in the floor looking at him. He was lying down there all beat up. * * *

"Q. I don't know whether you understood the question or not. In other words, did it appear to you he was making an effort to have intercourse with your wife? A. Absolutely was; he was right on top of her; right in between her legs.

"Q. Could you tell whether or not your wife was making any effort to prevent it? A. Well, her body was straightened out on the bed, out on the square like that (indicating), and as far as I see I didn't stay at the window and look through the door half a day to see what was going on. When I seen a man on top of my wife on the bed looking to me like trying to have sexual intercourse with her I went around the house and into the room and as soon as I entered the room or about this middle door he reared up in the position I told you."

On cross-examination, he testified:

"Q. Now just tell the jury what they were doing— was he trying to rape her or was he having sexual intercourse with her? A. I can't tell. I didn't stay there to see or look half an hour to see whether he was having intercourse with her or raping her, but he was in between the woman's legs and I couldn't see what she was doing herself over him. He had her practically covered up. I don't know whether he was trying to rape her or what he was doing. I couldn't say as to that part of it. * * *"

This testimony leaves it in doubt whether (following the theory of the defense) he believed his wife was being attacked or was immoral, seemingly the latter.

The first contention made is that the court erred in denying defendant a change of venue. The application sets out that great feeling was aroused by the homicide in the town of Hinton and surrounding community; a mass meeting was held and funds raised to employ counsel to assist in the prosecution. This is supported by articles from the newspapers at Hinton, Binger, and Anadarko, giving accounts of the homicide and of the denying defendant bail. The state met this by a substantial countershowing. Caddo county is one of the large counties of the state, being some 40 miles long from north to south. Hinton, the scene of the homicide, is near the north end of the county. Without discussing this assignment, we are of the opinion that a fair jury was had and there was no abuse of discretion in denying a change of venue. Williams v. State, 19 Okla. Cr. 307, 199 Pac. 400; Johnson v. State, 35 Okla. Cr. 212, 249 Pac. 971.

Complaint is made of the ruling of the court on various questions of law arising during the trial. This assignment, among other things, is directed to statements of counsel made in the presence of the jury. One such items is as follows: A witness, Padgett, on the stand in rebuttal, was asked by counsel for defendant on cross-examination, in substance, if he did not testify to a certain state of facts when on the stand in the first instance and after talking to counsel for the state when recalled testified to a different state of facts. Mr. Morris, special counsel for the state, said: "That is objectionable in the first place and it is absolutely false. The record is right here and shows just what his testimony was in there." Counsel for defendant then stated he would introduce the record of the testimony for the purpose of showing conflict. An objection to this was sustained. Both counsel for defendant and for the state erred. If the witness contra-

dicted his testimony on a material matter, a predicate for impeachment should be laid by calling attention to his former testimony, and then, if material, by introducing the record to impeach, not by stating his conclusion of the substance of the testimony on the particular point. On the other hand, counsel in objecting should not inject his opinion that the statement of the testimony is false. No formal offer of the contradictory statement of the witness was made. There is no substantial merit on this point. Under this assignment it is also urged that the names of two witnesses were not indorsed on the information and served two days before the beginning of the trial. No objection was made at the time these witnesses were called, but after they had testified counsel for defendant moved to strike out the testimony for the reason the names were not indorsed. The state admitted the names had not been served, but said opposing counsel were informed what they would testify, which was admitted. The failure to object to the witnesses when called was a waiver of the right to have the names served. The ruling of the court was not error. There are other matters covered by this assignment.

It is next argued that the court erred in permitting the state to introduce incompetent evidence prejudicial to defendant. This assignment is directed to testimony of statements of the wife of defendant to other persons concerning acts of defendant and to testimony of defendant's association with women other than his wife. These different matters are not separated, the argument is to the whole, in that it tends to establish defendant's guilt of other offenses. It is fundamental that a defendant may not be convicted of one crime by proving him guilty of another and independent offense. This rule excludes all evidence of collateral facts which are incapable of offering

a reasonable presumption or a logical inference as to the principal matter or fact in dispute. If an analysis of the record discloses the admission of evidence of other independent offenses, which may have influenced the verdict and which do not fall within some exception to this rule of evidence, the case should be reversed. The rule stated, however, must be considered with the equally well-settled rule that evidence material to the issues involved in the case on trial is not rendered incompetent merely because it may tend to prove a defendant guilty of another offense. The testimony complained of was brought out on cross-examination and by way of rebuttal. It related to immoral acts and conduct of defendant just prior to and about the time of the homicide.

The defense is dual; self-defense and temporary dethronement of reason or temporary insanity. It has been held by this court that, where a defendant interposes the plea of temporary insanity in a homicide case alleged to be brought about by the claimed intimacy of his wife with another man, the state may show in rebuttal that defendant at about the same time also had been guilty of moral delinquency, as tending to show the condition of his mind and to rebut the inference that the mental shock or strain was sufficiently great to unseat his reason. Tingley v. State, 16 Okla. Cr. 639, 194 Pac. 599; Coffeen v. State, 22 Okla. Cr. 212, 210 Pac. 288; Tapedo v. State, 34 Okla. Cr. 165, 245 Pac. 897. Under this view a part of the evidence was admissible.

A further part of the evidence complained of was admitted for the purpose of proving motive. The testimony of defendant gave his motive for slaying deceased as above set out. The testimony of the wife of defendant tends strongly to corroborate him as to motive. If the slaying was for the reason claimed by defendant, that is, to pro-

tect his wife from criminal assault or in self-defense or on account of emotional insanity, defendant was not guilty. The motive then becomes the vital question in the case. The state by cross-examination and in rebuttal met this testimony of defendant and his wife by evidence tending to show that the real motive which prompted defendant to kill deceased was the fact that deceased knew of defendant's association with immoral women and had disclosed that fact to defendant's wife or to Maude Stewart, an associate of defendant's wife, who in turn had informed her; that defendant received the information and this resulted in a difficulty between defendant and his wife and resulted in his slaying deceased. The state had the right to rebut the defendant's explanation of his motive, even though in doing so the evidence to rebut might incidentally show the defendant guilty of some other offense. Smith v. State, 3 Okla. Cr. 629, 108 Pac. 418; Johnson v. State, 22 Okla. Cr. 332, 211 Pac. 425; Johnson v. State, 35 Okla. Cr. 212, 249 Pac. 971. The cross-examination was within the rule laid down in the case of Gibbons v. State, 34 Okla. Cr. 407, 246 Pac. 1107.

Argument is also made to some other assignments of error but they are not of sufficient importance to call for special discussion. The court erred in permitting testimony to go too much in detail as to the conduct of defendant tending to show immorality about the time of the homicide. This character of evidence should not be permitted beyond the strict purpose of rebutting the claim of emotional insanity or of showing motive. The court by instruction 15 so limited the purpose for which this evidence was admitted. No exception was admitted. No exception was taken to any instruction given, nor was any request for additional instruction made. Where evidence of this kind is admitted, it must be limited to that partic-

ular purpose; otherwise it may result in the trial of collateral issues tending to prejudice the jury against defendant. The irregularity here, however, is not serious. It is not at all probable it had any effect upon the result of the trial. Upon a consideration of the entire record, we find no error substantially prejudicial to the rights of defendant.

The case is affirmed.

DAVENPORT and CHAPPELL, JJ., concur.