## JIM WILSON v. STATE.

No. A-4911. Opinion Filed July 18, 1925.
Rehearing Denied Oct. 30, 1925.
(240 Pac. 155.)

James S. Davenport and Jennings, Hall & Battenfield, for plaintiff in error.

George F. Short, Atty. Gen., and Fred Hansen, Asst. Atty. Gen., for the State.

EDWARDS, J. The plaintiff in error will be referred to as defendant as in the court below.

The evidence, in large part uncontradicted, discloses a rather unusual state of facts about as follows: On the afternoon of August 6, 1922, several persons who lived at or near Catale, going from Muskogee to their home, passed through Catoosa. Among them was J. T. Gaither and his father, J. F. Gaither. They arrived at Catoosa about 2 or 2:30 in the afternoon, and stopped at a cafe for a meal. They were strangers, and knew no one there. Soon after they entered the cafe and ordered their meal, and while sitting at the counter, the defendant, Jim Wilson, came in, and inquired of the person in charge for the cook or "hasher." He came out of the cafe; went to his residence about a block away; was gone about five minutes; and returned to the cafe. His son, Harvey Wilson, returned to the cafe

with him, or following close behind. On going into the cafe the second time he inquired who had called him a "son of a bitch," or who had said he was a "son of a bitch," and no one answered. He repeated the inquiry. J. T. Gaither answered that he must have his "wires crossed"; that no one had called him that name. He turned upon Gaither, and a scuffle ensued, and J. F. Gaither, the father, arose from his seat, and immediately Harvey Wilson, son of the defendant, opened fire with an automatic pistol, and shot and immediately killed J. F. Gaither, and shot and wounded J. T. Gaither, who died in a few minutes. The Gaithers and Wilsons had never seen each other before, and were wholly unacquainted. It is the theory of the state that, when the defendant first came into the cafe, he heard some statement which he took to be applied to him, and left the cafe with the statement, in substance, that he would be back soon, went to his place of residence, took a pistol which he was wearing inside his shirt, put it in a belt where it would be easily accessible, and returned with his son to ascertain and punish the person whom he thought had applied to him the epithet, "son of a bitch"; that he entered the cafe the second time ahead of his son with his pistol in his hand, made the inquiry above set out, and, as no one responded, he repeated it, and, when he was informed by young Gaither that no one had applied to him any such epithet, that he turned on Gaither with his pistol; and, as young Gaither attempted to protect himself from his assault, that his son, Harvey Wilson, who had come back with him for the purpose of aiding him, opened fire with the automatic pistol and killed the Gaithers.

The theory of the defendant is that he went to the cafe to see one Matthews, and, finding him out lef t e  e and went to his residence, took a dose of medicine, and returned to the cafe with the expectation that Matthews would then be there; that as he walked in the second time he heard some one use an epithet which he thought referred

to himself, and he then made inquiry and repeated it; that when young Gaither answered he did not exactly understand and inquired what was meant; that Gaither grabbed him, and at that time he pulled his gun and struck to knock him loose; that a scuffle and struggle ensued, and the elder Gaither then came toward him when the shots were fired by Harvey Wilson without his knowledge of any purpose to do so. The defendant himself did not fire any of the shots that caused the death of the two Gaithers. These shots, about seven in number, were fired by the son of the defendant, Harvey Wilson, who was tried separately.

Numerous errors are assigned in the petition in error, and several are discussed in the briefs. But the contentions advanced may be considered under two heads: First, that the court erred in admitting as rebuttal of the state evidence which was admissible only in chief; second, that the evidence is insufficient to prove that the defendant and Harvey Wilson entered into any conspiracy, or that the defendant in any manner aided or abetted Harvey Wilson in the homicide.

The first contention is based upon the fact that the trial court permitted the state to introduce in rebuttal the evidence of Archie Dickson, which was to the effect that immediately before the homicide he saw Jim Wilson about 50 feet from his home, and going toward it, immediately after Harvey Wilson had gotten out of Dickson's car in front of his home; this being between the time the defendant was first in the cafe and the time of the homicide. The defendant contends that this was a part of the state's case in chief, as it was necessary for the state to prove a conspiracy in order to connect the defendant with the homicide, and that the introduction of this evidence in rebuttal was prejudicial. The state contends that, since the defendant had testified that he did not see his son, Harvey, between the time he was first in the cafe and the homicide, it

was proper rebuttal to impeach such testimony. Section 2687, Comp. St. 1921, provides the order of proceedings in the trial of a criminal case, in substance, that the state shall open the case ànd offer evidence in support of the charge. The defendant shall then offer evidence in his defense, and the parties may then respectively offer rebutting testimony, unless the court for good reason, in furtherance of justice, or to correct an evident oversight, permits them to offer evidence upon their original case. The evidence complained of was probably admissible either as a part of the case in chief or in rebuttal. If not properly rebuttal, the trial court would have been warranted in permitting the state to reopen its case in chief for the purpose of introducing the evidence in question. It is within the discretion of the trial court in furtherance of justice to permit evidence in rebuttal which would have been competent evidence in chief. Tingley v. State, 16 Okla. Cr. 639, 184 P. 599; State v. Williams, 49 W. Va. 220, 38 S. E. 495.

The primary purpose of rules governing the order of the introduction of evidence is to promote the efficient administration of justice and to preserve the rights of an accused, and, since the matter rests in the sound discretion of the trial court, it would be an extreme case where it clearly appeared that prejudice had resulted, that an appellate court would hold that the order of presenting competent and material testimony was a violation of any substantial right. There is no merit in this contention.

The second and principal point argued by the defendant is that the evidence is insufficient. In passing on this question, it will be necessary to notice the evidence somewhat in detail. Since the firing of the shots that caused the death of the deceased was not done by the defendant, it was incumbent on the state to prove either by direct or circumstantial evidence that the defendant conspired with his son, Harvey Wilson, to take the life of the deceased, or

that they conspired to commit a misdemeanor in the course of which the homicide occurred.

The evidence of the defendant supports his theory. He testified he went into the cafe to see Matthews, and was informed by those present that Matthews had gone for water; that he left, saying he would be back soon; that his trip home had no significance whatever; that no difficulty occurred on his first visit to the cafe; that his second visit to the cafe was to see Matthews, and it was then that he heard some one use an epithet that he thought referred to him, and caused him to inquire who had said it, and, when young Gaither answered him, he inquired what he meant, and Gaither seized him, and he then drew his gun; that the elder Gaither then rose and started toward him when the shooting took place; he did not know his son was in the room until he opened fire; that he carried a gun a good deal of the time because threats had been made against him.

The state, in support of its theory, offers the testimony of E. E. Matthews, proprietor of the cafe, who, for the purpose of showing that the second trip of the defendant to the cafe was not to see Matthews, testified that as he left the cafe to go for water he met the defendant. It offered evidence of George Kelly that, when the defendant came to the cafe the second time, his revolver was in his belt. The defendant had testified on cross-examination that, on the first occasion when he went to the cafe, he had his pistol, but it was inside his shirt. It offered the testimony of Archie Dickson that he let Harvey Wilson out of his car at defendant's residence, and saw the defendant about 50 feet away, going toward his residence, between the time the defendant was first in the cafe and the time of the homicide. It offered further the evidence of George Kelly, who was a stranger and unacquainted at Catoosa, that he saw the defendant leaving the cafe on his first visit, and saw

him returning to the cafe in a few minutes with some one whom he did not know. It offered the evidence of W. B. Hardiston that he was on a seat in the cafe when Jim Wilson, the defendant, came in and asked who called him a name; that young Gaither said he must be mistaken—that none of them had done so; that the defendant, with his gun his hand, advanced on Gaither, and attempted to hit him, and that young Gaither grabbed his arm and shoved him back; that the elder Gaither jumped up, and Harvey Wilson then opened fire, and old man Gaither sank down. There was evidence that immediately after the shots were fired the defendant said, "Harvey, I didn't mean for you to do that." Harvey said, "I done it anyhow." There is no direct proof that the defendant and his son, Harvey Wilson, agreed with each other to go to the cafe and assault the person presumed to have insulted the defendant, but a conspiracy may be proven by the acts and conduct of the conspirators; that is to say, by circumstantial evidence. Ex parte Hayes, 6 Okla. Cr. 321, 118 P. 609; Washmood v. U. S., 10 Okla. Cr. 254, 136 P. 184; State v. Ryan, 47 Or. 338, 82 P. 703, 1 L. R. A. (N. S.) 862; People v. Kizer et al., 22 Cal. App. 10, 133 P. 516, 521, 134 P. 346.

It seems to us a reasonable and fair deduction from this evidence that the defendant on his first visit to the cafe fancied he was insulted. He returned to his home, moved the position of his pistol, and with his son returned and made inquiry with a view of at least chastising the person he thought had insulted him, and, in attempting to carry out his plan, the killing resulted. The responsibility of a conspirator is not confined to the accomplishment of the particular purpose of the conspiracy, but extends to collateral acts and offenses incident to and growing out of the purpose intended. Holmes v. State, 6 Okla. Cr. 542, 119 P. 430, 120 P. 300; Burns v. State, 8 Okla. Cr. 554, 129 P. 657.

From a careful consideration of the record and the able briefs of counsel we are of the opinion that the defendant had a fair trial; that issues were fairly submitted to the jury; and that the evidence amply supports the verdict. The case is affirmed.

BESSEY, P. J., and DOYLE, J., concur.