# ELZY GANDY v. STATE.

No. A-5518.  Opinion Filed May 15, 1926.
Rehearing Denied May 29, 1926.
(246 Pac. 887.)

Wilkinson & Saye and C. C. Wilkinson, for plaintiff in error.

The Attorney General and Smith C. Matson, Asst. Atty. Gen., for the State.

BESSEY, P. J.  The evidence shows that Robert Johnigan was a negro about 50 years of age, crippled in one leg; that for a period of 9 days he had been employed by Al Burch as a porter in the Burch Hotel at Marlow.  Elzy Gandy, the defendant, and several confederates, all living in and about Marlow, congregated in town one evening, and there arranged to enter en masse with sticks, bludgeons, and possibly firearms to "run the nigger out of town and beat him up."  After mobilizing their forces they proceeded to the hotel, at about 8 o'clock in the evening, and there found the negro Johnigan shining

shoes. Several of the party began to slap and beat the negro; about this time Burch, the hotel proprietor, came to his porter's rescue, striking the defendant with his fist and knocking him away from Johnigan. One of the party, Marvin Kincannon, thereupon shot Burch, killing him instantly. The negro ran into the telephone booth and Kincannon then stepped over the dead body of Burch to the telephone booth and shot Johnigan in the hip just as he was closing the booth door. He then pulled the negro out of the booth, beat him with his gun, and shot him a second time, from the effects of which he died the next day.

The testimony shows that the defendant was one of the chief instigators of the mob; that he took an active part in its organization; and there is some evidence tending to show that it was he who furnished Kincannon with the gun that caused the death of these two men.

The defendant denied that he helped organize the mob, or that he acted in concert with any of its members. He claimed that he was an innocent bystander there and went to this hotel with no evil or unlawful motive.

A conspiracy, like any other issue, may be proved by circumstantial evidence; often, in fact conspiracies can be proved in no other way. That there was concerted action between this defendant and others to commit a crime is confirmed by bits of testimony given by 11 different witnesses. That the defendant and his confederates may have had no intention of committing a homicide, or any expectation that their unlawful acts would terminate as they did, may be conceded; but that is not the test. These self-constituted guardians of the affairs of others sought by force and intimidation, with bludgeons and firearms, to prevent a hotel keeper from employing negro help. In carrying out this purpose a member of this mob killed an inoffensive, well

behaved negro and the proprietor of the hotel, a white man. Every member of the unlawful assembly was a potential murderer, and no member of it can plead justification, on the ground that some other member acted indiscreetly or used force in excess of their original purpose. Holmes v. State, 6 Okla. Cr. 541, 119 P. 430, 120 P. 300; 5 R. C. L. 1063 et seq.

The defendant complains that the court refused to submit an instruction on withdrawal from a conspiracy before final consummation. We find no evidence in the record supporting a withdrawal.

The defendant complains that certain remarks of the private prosecutor in his argument to the jury were prejudicial. On cross-examination the defendant was asked this question:

"Q. I will ask you if, right in front of Seivers Drug Store, you didn't give him (Kincannon) the pistol that he killed them with? A. No, sir.

"Q. Do you remember that Kincannon testified you did?

"Mr. Wilkinson: We object; that is improper.

"The Court: Sustain the objection.

"Mr. Wilkinson: We move to instruct the jury not to consider that.

"The Court: You will not consider that question, gentlemen."

The portion of the argument complained of follows:

"What do they do? They go to the hotel there. What did Johnny Morgan say? He said: 'Watch Kinny. I have seen him get out of tight places before.' You heard the witness that they wouldn't let tell what he told Mr. Simpson. I was present when he said it and God forgive me for not getting more about that witness—

"Mr. Wilkinson: The defendant objects to the last remark of counsel. That is not in evidence in this case.

"The Court: The jury remembers the evidence.

"Mr. Bond: I do not expect I would be such a fool as to put a man on the witness stand if I did not know what he was going to say. What did he say finally? He says, 'Elza says,' he said, 'Take this.' What was he taking? You heard the testimony come out last night that Kincannon swore in the first trial, in his trial, that Gandy gave him the gun.

"Mr. Wilkinson: We object to that. There was no such testimony. Counsel knows there was no such testimony.

"Mr Bond: They asked the question themselves.

"The Court: Don't use that.

"Mr. Bond: They asked the question, or Mr. Sullivan did.

"Mr. Wilkinson: I ask the court to instruct the jury not to consider that remark of counsel.

"The Court: I instructed the jury not to consider that question and it is not in the record of evidence. You must stay in the record.

"Mr. Bond: There is enough in this record to stick a man without getting out of it. I was honestly thinking he answered the question.

"Mr. Saye: Now, if the court please, we object to the gentleman repeating a remark that has been stricken from the jury.

"The Court: No more remarks about that.

"Mr. Bond: I was merely apologizing to the jury.

"The Court: It is not necessary. I have sustained the objection."

When the court directed the special prosecutor to desist his final remark stating, "I was honestly thinking that he answered the question," sufficiently apprised the

jury that the evidence had been misquoted. All this considered together rendered the irregularity harmless. Smith v. State, 6 Okla. Cr. 380, 118 P. 1003; Cope v. State, 15 Okla. Cr. 437, 177 P. 920; Kincaid v. State, 10 Okla. Cr. 357, 136 P. 779; Morgan v. State, 9 Okla. Cr. 22, 130 P. 522.

The court was zealous in according the defendant a fair trial.

The statement of the defendant addressed to some one of the assembly who hesitated, "Come on; there is no backing out," indicated that the defendant was willing to assume responsibility for all emergencies that might arise.

The judgment of the trial court is affirmed.

DOYLE and EDWARDS, JJ., concur.