JOE HALEY v. STATE.

No. A-6288.   Opinion Filed Feb. 29, 1928.
(264 Pac. 635.)

Sam S. Gill, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, J. The plaintiff in error, hereinafter called the defendant, was informed against in the district court of Oklahoma county, charged with the crime of assault and battery, with such means and force as likely to produce death; was convicted by a jury of the crime of assault and battery upon the person of Theodore Newcomer with a sharp and dangerous weapon with intent to injure him, and his punishment fixed by the jury at imprisonment in the penitentiary for a period of one year. Motion for a new trial was filed and overruled, and exceptions saved, and defendant has appealed to this court.

The testimony on behalf of the state is, in substance, that on or about December 7, 1923, at Valley schoolhouse, south of Choctaw in Oklahoma county, Okla., the neighborhood was engaged in a pie supper, and about 10 or 10:30 o'clock, at night, and at the close of the pie supper the defendant came to the schoolhouse on horseback, and rode his horse up on the porch in front of the schoolhouse; that about this time the prosecuting witness Newcomer started home, and stopped on the porch, and defendant turned his horse, or while the horse was being backed out, struck the prosecuting witness, pushing him up against the schoolhouse wall. The prosecuting witness kicked the horse, and was told by the defendant that, if he kicked the horse again, he would get down and thrash hell out

of him, and that prosecuting witness told him to get down. The prosecuting witness had a small child in his arms, and he turned and handed the child to a neighbor, and immediately returned to the place of the difficulty, and, when the prosecuting witness returned, the defendant had gotten off his horse, and was standing ready for the combat. Prosecuting witness went toward the defendant, and got hold of him, and defendant immediately cut him with a pocket knife.

Other witnesses testify as to the defendant being present, and one of the witnesses corroborated the prosecuting witness as to the defendant's horse being upon the porch.

The defendant in his own behalf stated that he happened to be at the schoolhouse the night of the difficulty; that his brother Rube was at the schoolhouse that night. He denied that he rode his horse upon the porch of the schoolhouse, but stated he rode up close to the porch, and called his brother out of the house. He say he guesses he made the assault upon Theodore Newcomer; that before his brother came out Mr. Newcomer walked up close to the edge of the porch with a baby in his arms; that his horse must have switched its tail, and Mr. Newcomer kicked him. Defendant said:

"I looked down, and said, 'If you kick my horse again, I will get down off on to you,' and Mr. Newcomer said, 'By God get down on me.' And I said, 'Well, put the kid down,' and I got down off my horse, and waited for my brother to come out there. Before my brother came out, Mr. Newcomer run up and struck me and grabbed me, and said, 'Durn you, I will kill you,' and said that two or three times, and when he said that about the second time, I got my knife out, a little bladed knife, and opened it and commenced cutting him. He then turned me loose."

This is, in substance, the testimony.

The defendant has assigned fourteen errors alleged to have been committed by the trial court, but the first, second, third, fourth. fifth, sixth, and seventh assignments may all be considered together, as they relate to the same question—the overruling by the court of defendant's motion for a new trial, and imposing the sentence and judgment upon the defendant based upon the verdict of the jury.

There is some conflict in the evidence on some minor matters; yet the weight of the evidence is all one way. It is not denied by the defendant that he was at the schoolhouse. And it is admitted by him that, when the prosecuting witness came out of the schoolhouse with a child in his arms, and kicked the horse or did something to it, the defendant informed the prosecuting witness that, if he did that again, he would come down on him; that the prosecuting witness turned the child to a neighbor, and got back near where the defendant was, and defendant had gotten off his horse and was ready for combat. that he was ready to accept the challenge of combat, and did accept it, and immediately thereafter, when the prosecuting witness got hold of him, began to stab the prosecuting witness with a knife.

The jury was the sole judge of the evidence and the credibility of the witnesses, and this court has repeatedly held that, where there is credible evidence to support the verdict of the jury, this court will not disturb the verdict.

In the case of Browning v. State, 31 Okla. Cr. 373, 239 P. 272, syl. par. 2, this court held:

"Where there is evidence from which the jury may reasonably and logically find the defendant guilty of the crime charged, in the absence of unusual circumstances, this court will not set aside the jury's verdict on account of insufficiency of the evidence." Wilson

v. State, 32 Okla. Cr. 139, 240 P. 155; Shields v. State, 32 Okla. Cr. 344, 240 P. 661.

There are a number of errors assigned, but in the view we take of this record it is not necessary to consider them. We hold that the evidence in this case is sufficient to sustain a conviction; that the instructions of the court were fair to the defendant, and, taken as a whole, correctly stated the law; that the defendant had a fair and impartial trial.

There being no error in the record, the judgment and sentence of the trial court is affirmed.

DOYLE, P. J., and EDWARDS, J., concur.