**Myer Aaron RUHM, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–16625.**

Court of Criminal Appeals of Oklahoma.

Oct. 1, 1971.

Rehearing Denied Oct. 13, 1971.

Leon E. Tabor, Oklahoma City, for plaintiff in error.

Larry Derryberry, Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge:

Myer Aaron Ruhm, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court of Pontotoc County, Oklahoma of the offense of Obtaining Stimulants by Fraud and Deceit. His punishment was fixed at ninety (90) days in the county jail and a fine of $500.-00 and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the non-jury trial, Michael Crossmock, after being granted immunity, testified that on June 11, 1970, he was living at an apartment in Ada with the defendant. On the morning in question, the defendant and Danny Etheridge wanted someone to pick up a prescription, which be volunteered to do. Crossmock testified that they went to the Kit-Kat Drive-In, wherein the defendant made a telephone call which he did not over-hear. The defendant stated that he had phoned a prescription for Desoxyn tablets for a Robert Jackson, and Ruhm stated that he had used Dr. Orange Welborn's name to authorize it. Crossmock further testified that Ruhm gave him the money with which to purchase the prescription; he went into the store, made the purchase while Ruhm remained in the automobile throughout the entire time, and Crossmock was arrested in the store with the prescription in his pocket.

Gerald Gentry testified that he was a pharmacist on duty at the Humpty Dumpty Drug Store on the 11th day of June, 1970, when he received a call from someone identifying himself as Dr. Welborn placing a prescription for Desoxyn tablets for a

Robert Jackson. He did not recognize the caller's voice as that of Dr. Welborn, and subsequently called Dr. Welborn's office and talked to his partner, Dr. R. J. Doty. He prepared the prescription before two police officers arrived at the store. Arrangements were made that he would nod his head when someone arrived to pick up the prescription. Shortly thereafter a young person, whom he identified as Crossmock, arrived at the store and requested the prescription for Robert Jackson.

Dr. Orange Welborn testified that he did not call in a prescription for Desoxyn on June 11 and did not know who did.

Deputy Osborn testified that he and Under-Sheriff Sliger received a call directing them to the Humpty Dumpty Pharmacy. On the way into the store, he observed a brown Pontiac Tempest pull into the parking lot and park near the store, being driven by the defendant. Crossmock and Etheridge got out of the car and came into the store. He arrested Crossmock after he had obtained the prescription from Mr. Gentry and removed the pills from Crossmock's pocket. They subsequently arrested Etheridge and defendant, who was still in the automobile.

Under-Sheriff Sliger's testimony was substantially the same as Deputy Osborn, with the exception that he did not observe who was driving the car.

The defendant did not testify, nor was any evidence introduced in his behalf.

The sole proposition asserts that the evidence adduced at the trial was wholly insufficient to sustain a conviction and the defendant's demurrer to the evidence should have been sustained. Defendant argues under this proposition that there was not sufficient evidence to corroborate the testimony of the accomplice, Crossmock. We have carefully considered the testimony of all the witnesses and conclude

that Crossmock's testimony was in fact corroborated. Crossmock testified that the defendant made a telephone call and returned, stating that arrangements were made. The defendant stated that the prescription would be in the name of Robert Jackson, and further, that the defendant had identified himself as Dr. Welborn. Crossmock was transported to the pharmacy in the defendant's car. Gerald Gentry testified he received a call from someone identifying himself as Dr. Welborn, prescribing Desoxyn tablets for a Robert Jackson. Crossmock arrived at the store to pick up the tablets for Robert Jackson. Ken Osborn testified that he observed Crossmock and the defendant as they arrived in an automobile being driven by the defendant and parked in the vicinity of the store. In the recent case of the Nation v. State, Okl.Cr., 478 P.2d 974, we stated in the syllabus:

"2. Court will take strongest view of corroborating testimony that testimony warrants before guilty verdict will be set aside.

"3. There is failure to corroborate accomplice testimony only if there is no evidence legitimately having that effect.

"4. If the accomplice is corroborated as to one material fact, or facts, by independent evidence tending to connect the defendant with the commission of the crime, the jury may from that infer that he speaks the truth as to all."

In conclusion, we observe that the Record is free of any error which would justify modification or require reversal. The judgment and sentence is accordingly affirmed.

NIX, J., concurs.

BRETT, J., not participating.