Gerald Franklin BELL, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–74–319.

Court of Criminal Appeals of Oklahoma.

Oct. 9, 1974.

John Street, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Kenneth L. Delashaw, Jr., Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Presiding Judge:

The appellant, Gerald Franklin Bell, hereinafter referred to as defendant, was charged, tried before a jury and convicted of the crime of Shooting with Intent to Kill in the District Court of Pawnee County, Oklahoma. The jury assessed his punishment at a term of twenty (20) years imprisonment in the state penitentiary and from a judgment and sentence in conformance with said verdict the defendant has perfected his timely appeal.

The evidence adduced at trial is as follows: Mr. and Mrs. Ted Lamb testified

that they owned a home in Pawnee County, that April 29, 1973, was the first day after the start of daylight savings time and that on the 28th they had advanced their clocks one hour. The Lambs were good friends with Mr. and Mrs. Henry Person with whom they usually go to church on Sunday morning. On the morning of the 29th they expected the Persons to come by their home about 9:00 a. m., but when the Persons did not come by 9:20 they left without them. While at church, they received a call and upon arriving home found that it had been broken into and that certain possessions, including firearms, were missing. They further testified that they never gave the defendant or Solan C. Scott permission to enter their home or to remove their belongings. It was stipulated during Mrs. Lamb's testimony that whoever shot Henry Person did so with the intention of killing him.

The next two witnesses were Mr. and Mrs. Henry Person. They testified that they had known Mr. and Mrs. Lamb about one year, that they habitually went to church with them, that they were to go by the Lamb's house about 9:00 a. m. on the 29th and they had forgotten to set their clocks up due to the start of daylight savings time. Consequently, they arrived about one hour late and found a tan, 1963 four-door Ford sedan with a "Port of Catoosa" tag on the front parked in the Lambs' driveway.

Mr. Person testified that he got out of the car and started toward the front door when he noticed something wrong. He picked up a boat oar from a nearby boat and proceeded towards the house when a man came out the front door with a shotgun. The witness dropped the oar and began backing away, whereupon his wife proceeded to back the car out of the driveway. The man stated, "Bring her back or I'll shoot you." Person responded, "I'm sorry fella, you do whatever you have to do because she ain't coming back up here." The man then proceeded to shoot Person, hitting him in the arm. The witness then observed another man get into the tan

Ford, start it and pull up next to the assailant. The assailant got in the passenger side and they drove away. Person could not describe either of the men. Mrs. Person essentially corroborated the testimony of her husband. She further stated that she could not recognize the assailant's face.

Mr. and Mrs. Ray Eschelman then testified that they lived approximately two miles away from the Lambs and that on the 29th at about 10:00 a. m. a 1963 tan Ford drove up to their home and the defendant got out and asked to use their phone. The defendant asked the party on the phone to meet him at a nearby service station and then left and returned to the car.

Both sides then stipulated that Person was treated for a gunshot wound in his shoulder and that a shotgun cartridge was found at the Lamb residence on the day in question. It was also stipulated that Under Sheriff Bill Welker would testify that on the 29th he found a 1962 tan four-door Ford with a "Port of Catoosa" tag on the front behind a truck stop approximately two and one-half miles from the Lamb residence.

The State next called Juanita Catron who testified that on the 29th she received a telephone call from the defendant who stated that he had car trouble and wanted her to pick him up. As a result, she picked the defendant and Scott up and took them to a club near Sapulpa.

Solan Carl Scott then testified that he was a convicted felon and that on the day in question he and the defendant met and discussed breaking into a house down by Lake Keystone. Scott had borrowed a car in preparation for the robbery and it was a "light colored" 1963 Ford with a tag on the front bearing the words "Port of Catoosa." They then drove out by the lake where they noticed a large house with no one apparently at home. The defendant got out and went to the door, waited awhile, and when no one answered, went around to the back, forced entry, opened the front door and told Scott to come in.

Scott stated that they removed several items and had moved the television to the front door. The defendant also found a shotgun and loaded same. As the defendant stepped outside the front door, he observed a man coming up to the house and Scott heard the man say something like "what are you doing." The defendant replied, "Don't come any closer or I'll shoot you." Scott observed a woman and two children in the man's car. As the man started walking towards the defendant, the defendant shot him. The woman in the car backed out of the driveway. Scott and the defendant left the television and drove to a nearby residence where the defendant got out to make a telephone call. When the defendant returned, he stated that he had called Timmy Catron's wife. They then pulled off the road and began hiding the merchandise. They then proceeded to a small service station and were shortly picked up by the Catrons. Scott further testified that the charge of shooting with intent to kill filed against him had been dismissed and that he received a two year suspended sentence for burglary of the Lamb home.

The defense then called Rebecca Spears who testified that on April 30, 1973, she was working at the bus station in Tulsa where she saw Scott. She stated that he told her that "he just shot a guy and he had to leave town." She further stated that she did not take him seriously as he was always joking. On rebuttal Scott denied having seen Rebecca Spears at any time on the 30th.

The defendant's first proposition in error urges that the trial court erred in overruling the defendant's demurrer to the evidence as the State's case was based solely on the uncorroborated testimony of an accomplice. In support of this contention the defendant argues that Scott was an accomplice with reference to the crime of shooting with intent to kill and that all independent testimony tended only to corroborate Scott's testimony with respect to the break-in and burglary, not the shooting.

■ In Oxendine v. State, Okl.Cr., 350 P.2d 606, this Court citing Holmes v.

State, 6 Okl.Cr. 541, 119 P. 430, 120 P. 300, held as follows:

" 'When a conspiracy is entered into to do an unlawful act, all persons who engage therein are responsible for all that is done in pursuance thereof by any of their coconspirators until the object for which the conspiracy was entered into is fully accomplished. This responsibility is not confined to the accomplishment of the common design for which the conspiracy was entered into, but it extends to and includes collateral acts incident to and growing out of the common design.' "

In the instant case the defendant and Scott conspired to burglarize a home. In pursuance thereof they broke into the Lamb residence and were in the process of removing property therefrom when discovered by Mr. Person. Incident to said burglary and in an attempt to escape, Mr. Person was shot. Said shooting was a collateral act incident to and growing out of the common design to burglarize the Lamb home. Therefore, Scott was an accomplice to the crime charged.

■ However, it is the opinion of this Court that the testimony of Scott was adequately corroborated. In Ruhm v. State, Okl.Cr., 489 P.2d 771, this Court held that if an accomplice is corroborated as to one material fact, or facts, by independent evidence tending to connect the defendant with the commission of a crime, the jury may from that infer that he speaks the truth as to all. In Calhoun v. State, Okl. Cr., 406 P.2d 701, this Court held that evidence corroborating an accomplice need not be direct, but may be circumstantial. In the instant case Person stated that the assailant on the 29th of April at approximately 9:30 a. m. got into the passenger side of a tan 1963 Ford sedan and drove away. Ray Eschelman testified that he lived approximately two miles from the Lamb residence and that at approximately 10:00 a. m. on the 29th two individuals drove up in a tan 1963 Ford and the defendant got out on the passenger side and made a phone call. This placed the de-

fendant in a 1963 tan Ford automobile in the general vicinity of the Lamb home a short time after the shooting. We believe this to be sufficient independent corroboration of Scott's testimony. Therefore, defendant's first proposition in error is without merit.

■ The defendant's last proposition urges that the prosecuting attorney improperly commented upon the defendant's failure to testify in his own behalf. The comment complained of is as follows:

"I want you to recall Mr. Person describing the man who shot the gun. I want you to recall the description he gave does not match Mr. Solan C. Scott. Now, their defense is that Mr. Scott did it. You know, he has seen Mr. Scott out there today. He has been sitting out there for three days—each of them have —and he has never come in here and said, 'Hey, I know who shot Mr. Peerson. It was Mr. Scott. He matches the description.'

"MR. STREET: I am going to object, Your Honor, to the improper comment of the District Attorney.

"THE COURT: Sustained.

"MR. STREET: I ask that the jury be admonished to disregard the statement of counsel.

"THE COURT: The jury will not consider the fact that Mr. Bell hasn't made any specific denial."

After studying the above comment it is difficult to determine exactly who the prosecutor was referring to in his statement. The comment could reasonably be interpreted to infer that defense counsel did not mention the similarity between Scott's appearance and the description of the prosecutor, trial judge or bailiff. Therefore, it is our opinion that in the instant case and with reference to the particular comment set out above and in light of the trial court's admonishment to the jury, the statement complained of did not constitute a specific reference to the defendant's

failure to testify in his own behalf. Defendant's last proposition in error is, therefore, without merit and the judgment and sentence appealed from is Affirmed.

BRETT and BUSSEY, JJ., concur.