**Freddie Lee TILFORD, Petitioner,**

**v.**

**Ray H. PAGE, Warden, Oklahoma State Penitentiary, and the State of Oklahoma, Respondents.**

**Civ. No. 68–147.**

United States District Court
W. D. Oklahoma.
Dec. 15, 1969.

Mac Oyler, Oklahoma City, for petitioner.

H. L. McConnell, Asst. Atty. Gen., Oklahoma City, for respondents.

## MEMORANDUM OPINION AND ORDER

**DAUGHERTY, District Judge.**

Petitioner proceeds herein seeking a writ of habeas corpus for the purpose of effecting his release from a state sentence of death upon a conviction of murder. Of the twelve grounds raised in his Petition originally before this Court, only two remain, which will be considered together with a new ground subsequently raised at the state level.[1] The claims now presented to the

---

1. Petitioner's original Petition was denied by this Court on April 17, 1968. Of the twelve grounds presented therein, the Court held that ten of them did not involve federal constitutional rights and that Petitioner had failed to exhaust his state remedies as to the other two which did involve said rights. On appeal, Tilford v. Page, 395 F.2d 220 (Tenth Cir. 1968), the case was remanded to this Court with instructions to hold same in abeyance and allow Petitioner a reasonable time to present his two constitutional claims to the state courts. This was done and after Petitioner obtained no relief in his habeas petition in state court the matter was revived in this Court. At a disposition hearing on April 10, 1969, three federal constitutional questions were agreed upon by all as being the claims presented to this Court as shown by the following discussion:

"THE COURT: Perhaps then gentlemen, I should consider this matter before me now on three constitutional complaints. Withholding evidence, favorable; the death jury impanelment and ground six in my order entered in the case. This hearing set today wasn't to resolve this matter, but to clear the situation up a bit and try to get the case back in some form of movement.

I take it that there has been no appeal to the United States Supreme Court from the Oklahoma Court of Criminal Appeal's decision.

MR. OYLER: [Attorney for Petitioner] That is correct, there has not.

THE COURT: So, all that is left now, is this petition for habeas in the Federal Court now.

MR. OYLER: Yes, sir.

THE COURT: Which proceeds after an exhaustion of state remedies on three constitutional questions as I have stated it, is that right?

Court are: (1) Suppression of favorable evidence by the prosecution, (2) Improper impaneling of a death jury, and, (3) Certain prejudicial remarks and conduct by the prosecution and the trial judge during Petitioner's trial. With reference to the first two claims above, the Court finds that Petitioner has exhausted his state remedies thereon, the State District Court having conducted an evidentiary hearing thereon which was adopted by the Oklahoma Court of Criminal Appeals and habeas relief denied. Tilford v. Page, 450 P.2d 914 (Okl.Cr. 1969). With respect to the third issue above, the Court has determined after the hearing on April 10, 1969 that Petitioner exhausted his state remedies thereon by presentation of same to the state court in his habeas petition. Petitioner's three claims as agreed upon are, therefore, now properly before this Court for determination. 28 U.S.C.A. § 2254(a) and (b).

The nature of the favorable evidence which Petitioner claims the prosecution suppressed is described as follows: (1) The State misrepresented the evidence in prosecuting Petitioner and a co-defendant in separate trials on the theory that each individually killed the victim. (2) The Oklahoma City Police Department made tests on all three co-defendants, including Petitioner, for evidence of having recently discharged a firearm, the results of which in each case were negative, which tests were not made available to the defense. (3) A certain police report concerning a watch or watches taken from Petitioner at the time of his booking was not made available to the defense. Petitioner claims that the report was altered to show that a watch of the deceased was taken from him, while in the earlier trial of his co-defendant, the booking officer testified that the watch was taken from a co-defendant.

■ The test by which these claims of suppression of evidence favorable to the defendant (Petitioner here) must be judged is set out in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1964) as follows:

"We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at p. 87, 83 S.Ct. at p. 1196, 10 L.Ed.2d at p. 218.

To make out a case of suppressed evidence, Petitioner must show: (1) Evidence which is favorable to him, (2) Such evidence was in the possession of the prosecution at some time during the Petitioner's trial, (3) The evidence was suppressed and not made available to the Petitioner on his request therefor, and, (4) The evidence was material either to the issue of Petitioner's guilt or punishment.

■ Petitioner was charged with murder in the course of committing the felony of armed robbery, as defined in 21 Okl.St.Ann. § 701. The penalty for this crime is either death or life imprisonment. 21 Okl.St.Ann. § 707. Under Oklahoma law, where more than one person participates in the crime, each participant is guilty of the proscribed criminal act without regard to whether he actually did the killing. Johnson v. State, 386 P.2d 336 (Okl.Cr.1964); Oxendine v. State, 350 P.2d 606 (Okl.Cr. 1960); Morris v. State, 96 P.2d 88 (Okl.Cr.1939).

■■ According to the record both the case of Petitioner's co-defendant jointly charged with him but separately tried and Petitioner's case were submitted to the jury on the theory that it was not necessary that either one of them

MR. OYLER: That is correct.

THE COURT: Alright then gentlemen, I will consider that I have these three constitutional questions before me. I know that I have an exhaustion of state remedies on two. I am not sure about the third. I will have to check into it a little bit, but since it is agreed now that these are the three constitutional questions before me and I should proceed, then perhaps you gentlemen would like to brief to these three points."

did the actual killing to be guilty of the crime charged and, therefore, subject to the maximum punishment. Petitioner's charge that the prosecution misrepresented the evidence by attempting to prove that both Petitioner's co-defendant, tried one month earlier, and Petitioner did the actual killing and that the prosecution knew which one did the killing is without basis in fact.[2] Under this record, Petitioner's claim, which is really a claim of prejudice, is without foundation.[3] Petitioner's first claim of suppressed favorable evidence fails to meet the *Brady* test in at least four respects: The trial "strategy" of the prosecution is not "evidence"; there was no favorable evidence in the *Brady* sense in the hands of the prosecution; there was no suppression of favorable evidence by the prosecution and there was no request by the Petitioner for any favorable evidence made at the trial.

■ Petitioner next claims that certain police reports were not made available to him and that one police report was altered. This claim was settled at the above evidentiary hearing adversely to Petitioner[4], and as this Court finds such factual determination to be fairly supported by the record of the state evidentiary hearing, it is presumed to be

---

2. At an evidentiary hearing ordered by the Oklahoma Court of Criminal Appeals, Tilford v. Page, 450 P.2d 914 (Okl.Cr.1969), the prosecutor testified as follows:

"Q [by Petitioner's attorney] What I'm getting at: was it not your strategy and evidence and presentation in the Lewis case that due to the entry of the bullets in the body of the deceased, the angle which the bullets took, that no one other than the defendant, Melvin Alphonzo Lewis, could have fired the fatal shots which killed the deceased?"

"A [by District Attorney] No, I had no strategy, as you call, about it."

"Q You had nothing in that regard?"

"A No; all I had was to put on the evidence and try to establish the truth as best we could, physical facts, circumstantial evidence, and by witnesses."

Evid.Hrg. Tr. 128–129.

"Q [by Respondent's attorney] Mr. Harris, is this a correct statement? You didn't, and you don't today, know who fired that fatal shot in that car out there on that night in question, do you?"

"A [by District Attorney] No, I don't know. There were several shots that would have been fatal. This man had, I believe, four bullets in him; and one that—not in him, but it shot his ear off, or part of his ear—went through his ear.

And we know that Tilford—that Lewis was not in the filling station, and we know that one shot hit this man in the filling station when Lewis was not even present."

Evid.Hrg. Tr. 132.

"Q [by Petitioner's attorney] You stated on cross examination that either could have done it; is that correct, sir?"

"A [by District Attorney] I think I stated that one shot was certainly shot by Tilford."

"Q No, I'm talking about just now on cross examination by Mr. Owen, you stated in essence, either could have done it; is that not correct?"

"A Well—

"MR. OWEN: I think I asked if either could have fired the fatal shot."

"Q Fatal shot."

"A Well, we never knew which one was the fatal shot, or which one of them fired the fatal shot."

\* \* \* \* \*

"A It was my opinion, from reviewing the evidence, and so forth, that perhaps Lewis at least fired one or more shots. Now which shot is fatal, we were unable to determine, and who might have fired that shot. There were at least three shots in the man's body, either one of which could have killed him."

Evid.Hrg. Tr. 139–141.

3. Petitioner cites United States ex rel. Almeida v. Baldi, 195 F.2d 815, 33 A.L.R. 2d 1407 (Third Cir. 1952), cert. denied Baldi v. United States ex rel. Almeida, 345 U.S. 904, 73 S.Ct. 639, 97 L.Ed. 1341, as authority for the proposition he here advances. However, that case is here inapposite in that the suppressed evidence consisted of a bullet from a policeman's gun rather than the gun of the accused. There is no suggestion here that the victim was killed by anyone other than those charged with this crime.

4. "Q [by Respondent's attorney] At the time prior to the trial of Tilford, did you make your complete file available to Mr. Wise, the defense attorney?"

"A [by District Attorney] Yes, and to the attorneys for the other two men also. They had access to the police reports; everything we had."

Evid.Hrg. Tr. 134.

correct as provided in 28 U.S.C.A. § 2254(d). Maxwell v. Turner, 411 F.2d 805 (Tenth Cir. 1969).[5] Petitioner produced no police report which was not made available to him prior to his trial. Thus, Petitioner has failed to show a suppression of favorable evidence in this regard under the test prescribed by Brady v. Maryland, supra, in that all police reports were in fact made available to him.

Petitioner's final contention with respect to suppressed evidence, relating to the alteration of a police report, is likewise disposed of by the state evidentiary hearing.[6] Petitioner failed to show suppression of favorable evidence by the alteration of a police report and, thus, failed to meet the *Brady* test in this respect. The court in the evidentiary hearing concluded that no suppression of favorable evidence in this respect took place. As this factual determination is found by this Court to be fairly supported by the record of that proceeding, such determination is presumed to be correct within the provisions of 28 U.S.C.A. § 2254(d) Maxwell v. Turner, *supra*.[5]

■■ Petitioner next complains that the jury which was impanelled to try him was selected in a proceeding which excluded veniremen on the ground of their conscientious or religious scruples against the death penalty. The state has conducted an evidentiary hearing on this point, the record of which is before this Court, and has factually determined that:

> "Jurors were not excused for cause during the voir dire examination because they voiced general objection to the death penalty or expressed conscientious scruples against the infliction of the death penalty." Evid. Hrg. Tr. 156.

The test laid down by Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L. Ed.2d 776 (1968), with respect to a death sentence returned by that jury is that:

> "* * * a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." 381 U.S. at p. 522, 88 S.Ct. at p. 1777, 20 L.Ed.2d at pp. 784–785.

Particular causes for challenge in Oklahoma are of two kinds; implied bias and actual bias. The former is present as a matter of law when certain facts are determined to exist and the latter depends on the trial court's conclusions as to the juror's actual state of mind with respect to the case to be tried. 22 Okl.St.Ann. § 659. The Court is here concerned with the statutory definition

---

5. This case states that " * * * the federal district court need not hold an evidentiary hearing if the hearing in the state court was adequate to develop the facts." 411 F.2d 807. The Court finds and concludes from the record of the state transcript of the evidentiary hearing of Petitioner's claims herein that the merits of his claims were fully, fairly and adequately determined and that the factual conclusions of the state court are fully supported by the evidence appearing in that record. Petitioner makes no claim to the contrary, nor makes any claim based on sub-paragraphs (1) through (7) of 28 U.S.C.A. § 2254(d).

6. "Q [by Respondent's attorney] * * * Were the police reports counsel is talking about today in the file at that time?"
"A [by District Attorney] Oh, yes, and as I recall, I know one attorney representing one of them—I don't know whether it was Tilford's attorney or not —had complete copies of the police reports."
"Q Have you made any substitutions in this file, or have you taken anything out or added anything since that time?"
"A No; as far as I know, the file would be today like it was then other than there has been pleadings and various things filed since that time that has been added to the file."
Evid.Hrg. Tr. 131.

of implied bias, specifically subsection 8 of 22 Okl.St.Ann. § 660. It provides:

"8. If the offense charged be punishable with death, the entertaining of such conscientious opinions as would preclude his finding the defendant guilty of, in which case he shall neither be permitted nor compelled to serve as a juror."

The statute further provides:

"A challenge for implied bias may be taken for all or any of the following cases, *and for no other.*" (Emphasis supplied).

This statute is markedly different from the statute in Witherspoon v. Illinois, supra, in that the Illinois statute excluded all jurors who expressed conscientious scruples against the death penalty, regardless of whether they could make any determination of guilt. The same may be said of the Alabama statute in Boulden v. Holman, 394 U.S. 478, 89 S. Ct. 1138, 22 L.Ed.2d 433 (1969). The Oklahoma statute does not exclude any juror who is opposed to the death penalty so long as his opinion does not preclude him from making an independent determination of guilt. This is the essence of the *Witherspoon* decision. Thus, in Oklahoma it is not possible, if 22 Okl.St.Ann. § 660, subd. 8, is followed, to exclude a juror for cause solely on the basis he is simply opposed to capital punishment. He must also be shown to be precluded from finding the defendant guilty because of such conscientious opinion, before he may be excused for cause.

Bearing in mind that it is no cause for challenge that a juror is opposed to capital punishment, the Court has reviewed the testimony of the seven veniremen who were excused from Petitioner's trial and who were called as witnesses in the evidentiary hearing, and finds that none of them were excused for this reason alone, which would have been an invalid exclusion not authorized by Oklahoma law.

Many of these witnesses contradicted themselves in their testimony concerning whether they could determine guilt in spite of their views concerning the death penalty, thus presenting issues of fact as to the actual basis for their exclusion from the jury. The issues of fact were for the District Court to determine at the evidentiary hearing, the District Court determined that these jurors were not excluded solely on the basis of their general objections to the death penalty and the Court finds this determination to be fairly supported by the record of that hearing, considered as a whole. Therefore, the state's factual determination of that issue is presumed to be correct according to the provisions of 28 U.S.C.A. 2254(d), and the Court further finds and concludes that the District Court applied the proper constitutional standards in making such determination as laid down in Witherspoon v. Illinois, supra. It would be inappropriate to conduct this evidentiary hearing over again merely to reiterate that the correct legal principles had been applied. Maes v. Patterson, 401 F.2d 200 (Tenth Cir. 1968). Maxwell v. Turner, supra.[5]

Petitioner's final claim relates to occurrences at his trial which he contends violate his constitutional rights. At the disposition hearing the attorneys agreed that this claim was set out as Ground 6 in the Order of this Court dated April 17, 1968. This ground in said Order reads:

"(6) Prejudicial conduct of the state prosecutor in injecting prisoner's character in the trial and the fact that the Petitioner had been in the penitentiary prior to this offense, the Petitioner not having taken the stand in his own defense."

In submitting his brief herein, as ordered at the April 10, 1969 hearing, counsel for the Petitioner has enlarged Ground 6 from the claims that the prosecutor injected a prior conviction of Petitioner into his trial and commented to the jury about the Petitioner's failure to testify in his own behalf to include certain alleged prejudicial remarks made by the trial judge by admonishing a defense witness to talk louder, chiding defense counsel for seeking an early recess

and continuance, mentioning the fact that a co-defendant was tried one month earlier, arbitrarily not giving the defense more time to interview a witness (who had been confined in the County Jail for one month preceding Petitioner's trial) and commenting on the evidence. All of these matters appear in the transcribed record of Petitioner's trial. The Court will treat with each of these claims.

▮ Regarding Petitioner's prior conviction being injected into the trial, this came in the form of an unresponsive answer by Petitioner's co-defendant:

"Q [by prosecuting attorney] Do you know Freddie Lee Tilford?

A [by Petitioner's co-defendant] Yes.

Q And where did you know him?

A We were in the Pen before together and I seen him occasionally before I went down there."

Trial Tr. 294.

and later by the following:

"Q [by prosecuting attorney] And since you have been under this guardianship you have been in the penitentiary for burglary, have you not?

A [by Petitioner's co-defendant] Yes.

Q And this is when you met—you saw Tilford?

A No, I met him before I went to the pen.

Q You did see him over there too?

A Yes."

Trial Tr. 343–4.

In neither of the above instances did Petitioner's counsel object to these references. In Petitioner's motion for new trial this occurrence was not mentioned. The trial judge was not called upon to admonish the jury. This occurrence did not invade any of Petitioner's constitutional rights or if so the same was waived. Petitioner mentions no constitutional violation and cites no case holding that it amounts to a violation of federal constitutional rights. Our Circuit

has recently treated with this general matter in the case of Brown v. United States, 380 F.2d 477 (Tenth Cir. 1967). In that case our Circuit did not consider this matter to involve a federal constitutional right but, rather, a question of trial prejudice. A motion for mistrial was requested in that case which was not done in the case at bar. The Court held in approving the denial of a mistrial that generally errors in the admission of evidence can be cured by an admonition when requested and that this error was capable of being cured by an admonition and was not fatal so as to require a mistrial. Thus, it clearly appears that this complaint does not involve a federal constitutional question. Moreover, any objection to the same was waived by failing to ask for an admonition or mistrial. Further, from a careful review of the entire trial transcript it is concluded that no prejudice resulted to Petitioner from this trial occurrence.

▮ As to Petitioner's claim that the prosecutor commented to the jury about his failure to testify in his own behalf, the record shows the following:

"Now, ladies and gentlemen of the jury, there is not one iota of evidence disputing any of these witnesses in this case."

\* \* \* \* \* \*

"It's up to you, ladies and gentlemen, and remember, there is not a word of evidence that the state put on that is disputed."

Tr. 377–378.

It is well settled that this type of argument does not amount to commenting to the jury that the accused failed to take the witness stand in his own behalf. Our Circuit has recently so held in United States v. Reid et al., 415 F.2d 294 (Tenth Cir. 1969). The type of remark involved in the above case is like that involved herein, namely, a general statement that certain evidence of the Government simply stands undisputed in the case. This, of course, is not tantamount to commenting to the jury that the defendant has failed to take the witness stand in his own behalf and is, there-

fore, inferred to be guilty for such comments involve the proposition that evidence to dispute the Government's case may be produced by witnesses other than the defendant himself. Here, again, the defendant made no objection to the comment in the argument and did not move for a mistrial. As stated in the above case, a comment of the prosecutor about the defendant's failure to take the witness stand must, "directly and unequivocally call attention to the failure of the accused to testify" and must be such that the, "jury would naturally and necessarily understand the statement to be a comment on the failure of the accused to testify," in his own behalf. The record in this case does not satisfy this test. The claim is wholly without merit.

 The claims of the Petitioner with respect to the conduct and remarks of the trial judge do not raise a federal constitutional question. They have been considered by the Oklahoma Court of Criminal Appeals and correctly found not to be trial errors. As the federal courts permit the trial judge to comment on the evidence, it is difficult to see how this practice can be authorized on the one hand and found to be unconstitutional on the other. No authority is cited or found that the comments involved herein violated federal constitutional rights when, as here, the jurors were instructed that they are the sole judges of the facts and the weight of the evidence, including the credibility of witnesses.[7] Quiles v. United States, 344 F.2d 490 (Ninth Cir. 1965), cert. denied 382 U.S. 992, 86 S.Ct. 571, 15 L.Ed.2d 479. Cf. Stevens v. United States, 306 F.2d 834 (Fifth Cir. 1962).

The Court finds and concludes that Petitioner's claims with respect to suppression of evidence favorable to him and an improperly constituted jury have been factually determined by the state court in an evidentiary hearing, the record of which has been presented to and reviewed by this Court; that such determinations are fairly supported by the record of that hearing, and that according to the provisions of 28 U.S.C.A. § 2254(d) such determinations should be and, therefore, are presumed to be correct. Maxwell v. Turner, supra; Ortiz v. Baker, 411 F.2d 263 (Tenth Cir. 1969); Jolly v. Crouse, 411 F.2d 808 (Tenth Cir. 1969); Day v. Page, 411 F. 2d 810 (Tenth Cir. 1969). The Court further finds and concludes that Petitioner's claim as respecting the remarks and conduct of the prosecution and the trial judge at his trial do not present federal constitutional grounds for relief and, therefore, do not present a federal question to be decided by this Court in this proceeding. Petitioner is, therefore, not entitled to relief on such claims.

It is, therefore, ordered that the Petition for Writ of Habeas Corpus filed in this case be and the same is dismissed and the indefinite stay of execution entered in this case on July 29, 1969, is dissolved effective thirty (30) days from the date hereof.

---

7. These instructions are found at Trial Tr. 413, 418, 426.