**Milton Clark DANGERFIELD, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–75–355.**

Court of Criminal Appeals of Oklahoma.

Nov. 17, 1975.

Merle G. Smith, Jr., Guthrie, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Judge:

Appellant, Milton Clark Dangerfield, hereinafter referred to as defendant, was charged conjointly with a co-defendant, tried and convicted in the District Court, Logan County, Case No. CRF–74–33, for the offense of Robbery By Fear After Former Convictions of Felonies in violation of 21 O.S.1971, § 791 and 21 O.S.1971, § 51. His punishment was fixed at a term of twenty (20) years imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

The State's initial witness was Mrs. Velma Hogan, the manager of White's Midwest Jewelry Store in Guthrie, Oklahoma. She testified that between 9:30 a. m. and 9:45 a. m. on June 26, 1974, she was the only employee working when two black men entered the sotre. The witness stated that one man went behind the counter and

started taking all the jewelry out and putting it on top of the counter while the other man stood beside her. The witness, over the objection of the defense counsels, identified the man who went behind the counter as the co-defendant and the man who stood beside her as the defendant herein. According to Mrs. Hogan, she recognized the defendant and the co-defendant as being the same customers that had been in the store the evening prior to the robbery. The witness stated that the defendant indicated to her that he had a gun under his shirt and said, "Now, I have a gun. I will kill you unless you do what I say." Mrs. Hogan further testified that a third man entered the store during the robbery. He was carrying a red suitcase and aided the others in placing the merchandise in the suitcase. She said the three men then left the store and got into a green car which had been parked in front of the store for about thirty to forty-five minutes and drove off. Further, the witness related that the defendant was taller than the other two men, that he had a beard and mustache and was wearing a hat. Also, she said that the other two men had mustaches and were wearing floppy hats.

The State then called Joe W. Black, owner of White's Midwest Jewelry Store. Mr. Black testified that he and lieutenant Hasler of the Guthrie Police Department made an inventory of the items found in the red suitcase after the arrest. He stated that the items inventoried were from White's Midwest Jewelry Store.

Bob Ward, an attorney in Guthrie, Oklahoma, testified that he was walking by White's Midwest Jewelry Store on the morning in question and, that as he passed the store, he observed three individuals leaving the store, carrying a red suitcase. He testified that after the three men passed behind him, they got into a green car and drove in a westerly direction and turned south on the first corner west of the store. The witness was unable to identify the men, other than that they were Negro and one was rather tall and one was wearing a hat.

The State then called Albert Hasler, a Lieutenant Detective for the Guthrie Police Department. He testified that he arrived at the jewelry store and shortly thereafter left the store looking for three black subjects in a green car. The witness stated that he arrested the co-defendant with the assistance of other officers after they observed the co-defendant on the top of a building located approximately three blocks from the jewelry store.

Dennis Orndorff, Lieutenant for the Guthrie Police Department, testified that he went to the jewelry store on the date in question and stayed approximately two minutes. He stated he left at that time and began patrolling the area looking for the vehicle which had been described to him. The witness said that he proceeded to the two hundred block on South Second Street, Guthrie, Oklahoma, where he observed the co-defendant running from an alley in an easterly direction. According to the witness, the co-defendant then ran back in a westerly direction and, upon being followed, was observed on the roof of a building located in the alley. At this time the co-defendant was apprehended. Officer Orndorff testified that a search of the area around the building yielded a red suitcase which contained items of jewelry and a pistol. The witness further related that a 1971 green Chevrolet was parked in the alley near the scene of the arrest of the co-defendant.

The State's final witness was Dale Orndorff, Chief of Police, Guthrie, Oklahoma. He testified that he, along with Logan County Sheriff Clifford Endicott and State Highway Patrol Trooper Jerry Hughes, arrested the defendant in a burned-out building located in the two hundred block of South Second Street, Guthrie, Oklahoma. The witness also stated that the alley where the co-defendant was arrested was directly behind the building in which the defendant was arrested. Thereafter, the State rested.

The defendant first called Cliff Endicott, Sheriff of Logan County, who testified that he assisted in the arrest of the

defendant. The witness stated that he took a photograph of the defendant after he was taken into custody. The witness identified the photograph and it was admitted as Defendant's Exhibit No. 1.

Robert Nephew testified that he owns a barbershop located in the two hundred block on South Second Street, Guthrie, Olahoma, and that he arrived at his shop at approximately 8:45 a. m. on June 26, 1974. He stated that he noticed a car parked behind his shop when he drove by at about 8:15 a. m. on his way to breakfast. The witness said that he thought this was the same car which was there at the time of the defendant's arrest. Mr. Nephew further testified that the co-defendant walked into his shop at 9:50 a. m. and asked what time it was.

The defendant then called Donna Shirley. She testified that on June 25, 1974, the day before the alleged robbery, the co-defendant, the defendant and Clifton Drake were in her apartment located in Oklahoma City at 3:00 p. m. She stated that at that time, the co-defendant and Drake left her apartment and went swimming at another apartment complex located in Oklahoma City. She further testified that the defendant was not only present at her apartment at 3:00 p. m., but that he remained in her presence in Oklahoma City until approximately 12:30 a. m.

Clifton Drake testified that he and the co-defendant, accompanied by other individuals, left Donna Shirley's apartment at approximately 3:00 p. m. on June 25, 1974, and went to another apartment complex in Oklahoma City to attend a swimming party. He testified that between 3:00 p. m. and 6:00 p. m., the co-defendant was in his presence at all times with the exception of approximately ten minutes.

Georgia Mae Drake, Clifton's mother, testified that Clifton did not come home until approximately 6:30 p. m. on June 25, 1974.

The final witness for the defendant was Aaron Banks. He testified that he saw the defendant at the apartment complex which he managed in Oklahoma City at 6:00 p. m. on June 25, 1974. He further testified that he saw the co-defendant at the same apartment complex at 3:00 p. m. on June 25, 1974, during the swimming party.

The defendant raises two assignments of error to be considered by this Court. The defendant contends that the court erred in allowing the witness, Mrs. Hogan, to testify as to the identification of the defendant without first conducting a hearing to determine if the pretrial identification of the defendant was tainted by the pretrial photographic identification and that the trial court erred by not conducting a hearing outside the hearing of the jury prior to its admission at trial.

The record in the instant case reveals that on June 27, 1974, the day after the robbery and arrest of the defendant, Officer Albert Hasler of the Guthrie Police Department exhibited to Mrs. Valma Hogan a series of eight (8) photographs. Mrs. Hogan identified one photograph as the defendant. The police officer had unknowingly included an older picture of the defendant which was on file in the Guthrie Police Department with the photograph taken of the defendant on the day of his arrest in the instant case. Mrs. Hogan did not identify the defendant from the older photo. The defendant maintains that an examination of the photographs which are not of the defendant reveals that they are suggestive based on age, pose, physical characteristics and background. These photographs appear in the record and have been considered by this Court.

Both the defendant and the State set forth *Davis v. State*, Okl.Cr., 467 P.2d 521 (1970), as authority. In *Davis*, supra, this Court said:

"We further observe that in the event the defendant raises a timely objection to the courtroom identification of the defendant for the reason that it is based on a pre-trial identification by photograph or line-up conducted in a manner contrary to the rules enunciated in *United States v. Wade*, 388 U.S. 218, 87 S.Ct.

1926, 18 L.Ed.2d 1149 and *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, the trial court should conduct a hearing outside the presence of the jury and determine if the pre-trial identification procedure was conducted in accordance with the rule enunciated in *United States v. Wade,* supra. In the event that the pre-trial identification was not conducted in accordance with *Wade,* but it is established that the in-court identification can be made from an independent source, then the trial court should permit the State to present the in-court identification." (Footnote Omitted)

■ The transcript of the trial reveals that prior to the in-court identification, the witness stated that she remembered the men who had robbed her as the same men who had been in the store the evening prior to the robbery. She was also able to give a description of the men and was able to recall the approximate time they were in the store the evening prior to the robbery and even what they were looking at while in the store. Further, the record discloses that the witness could identify the defendant on the basis of what she observed at the time of the offense and not necessarily solely on the basis of the photographs shown to her during the pretrial identification. Therefore, even if the hearing was granted by the court and the defendant was successful in showing that the pretrial identification did not conform to the rules as set out in *Wade,* supra, the trial court still could permit the State to present the in-court identification based on the showing that the in-court identification could be made from an independent source other than the pretrial identification.

■ We note that although an evidentiary hearing was not held at the time of trial, the trial court had before it, and in fact considered, the factors necessary to determine if the pretrial identification was in compliance with the *Wade* decision. We further observe our holding in the com-

panion case wherein we held that while it is desirable that a full evidentiary hearing be had either at the motion to suppress or at trial, the record supports the trial court's determination of admissibility. Therefore, it is our opinion that the record in the instant case does not support the identification of the defendant at trial to be tainted by any pretrial identification procedures used by the law enforcement authorities. Accordingly, we find the defendant's assignment of error to be without merit.

■ In his final assignment of error, the defendant maintains that the court erred in not declaring a mistrial after the District Attorney made repeated references during his closing argument to the evidence presented being uncontroverted and not denied. In support of his argument, the defendant sets out various statements made by the prosecutor. One such statement provided as follows:

"* * * Now, I'm going to ask you this question, is there one bit of contradictory evidence to the effect that there was a wilful or wrongful act of taking something? I submit to you that there is not. * * * I want to ask you this question. Has there been any evidence that controverts Mrs. Hogan's testimony about this assault being made upon her, about these threats being made upon her * * * Has her testimony in that respect been controverted in any way by any of these witnesses on behalf of the defendants? I submit to you that they have not, that her testimony has not. * * * You know she was the manager there, she had that, now, has that been controverted in any way?"

The defendant contends that these repeated and improper declarations by the State were intended to and did unfairly accentuate the fact that the defendant did not testify in his own behalf and were comments on the failure of the defendant to testify in violation of the provisions in 22 O.S.1971, § 701. We disagree.

In a recent decision, *Smith v. State*, Okl.Cr., 521 P.2d 832 (1974), this Court, citing previous decisions, stated:

"Where a defendant fails to offer any evidence, the prosecutor is not prevented from discussing the evidence against him and to state that such evidence is uncontradicted. Such argument would not be a violation of statute forbidding comment on the fact the defendant did not testify."

■ This Court has consistently held that 22 O.S.1971, § 701 is a comprehensive statute which will not be extended or enlarged by this Court so as to prevent a fair discussion of the evidence. Further, this statute will not be deemed to go to the extent of prohibiting comment upon inferences reasonably to be drawn from a failure to controvert the State's evidence by proper proof other than that which might be given by the defendant personally. See *Tilford v. State*, Okl.Cr., 437 P.2d 261 (1967) and *Denney v. State*, Okl.Cr., 346 P.2d 359 (1959).

■ This Court notes that the only evidence presented by the State which the defendant's witnesses controverted was in reference to Mrs. Hogan's testimony that the defendant was in the store the evening prior to the robbery. At no time did the defendant offer witnesses to testify as to his whereabouts on the date in question to show a basis for his main defense of mistaken identity. Thus, the prosecutor had the latitude to comment upon the fact that the defendant failed to present evidence which controverted the elements of the State's case. This Court further notes that in *Tilford v. Page*, 307 F.Supp. 781 (1969), the United States District Court for the Western District of Oklahoma, citing *United States v. Reid*, 415 F.2d 294 (Tenth Cir., 1969), held that a comment of the prosecutor about the defendant's failure to take the witness stand must directly and unequivocally call attention to the failure of the accused to testify and must be such that the jury would naturally and necessarily understand the statement to be a comment on the failure of the accused to testify in his own behalf. While this Court recognizes that the remarks of the prosecutor bordered on impermissibility, the prosecutor at no time directly commented upon the defendant's failure to take the witness stand. Therefore, it is the opinion of this Court that the statements complained of did not constitute error.

Having carefully considered the record and briefs before this Court, and finding no error, we conclude that the judgment and sentence appealed from should be, and the same is hereby, affirmed.

BRETT, P. J., and BUSSEY, J., concur.